**UNITED STATES of America, Plaintiff,**

v.

**L'OREAL S.A., L'Oreal USA, Inc., and Carson, Inc., Defendants.**

**No. Civ.A. 1:00CV01848.**

United States District Court, District of Columbia.

Nov. 27, 2000.

Maurice Stucke, U.S. Department of Justice Antitrust Division, Washington, DC, for Plaintiff.

Peter D. Standish, Weil, Gotshal & Manges, LLP, New York City, for Defendants.

## *FINAL JUDGMENT*

LAMBERTH, District Judge.

WHEREAS, Plaintiff, United States of America, filed its Complaint on 31 July 2000, Plaintiff and Defendant L'Oreal S.A., Defendant L'Oreal USA, Inc. and Defendant Carson, Inc., by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, Defendants agree to be bound by the provisions of this Final Judgment pending its approval by this Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights or assets by the Defendants to ensure that competition is not substantially lessened;

AND WHEREAS, the United States requires Defendants to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Defendants have represented to the United States that the divestitures required below can and will be made and that Defendants will later raise no claim of hardship or difficulty as grounds for asking this Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## I. *Jurisdiction*

This Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II. *Definitions*

As used in this Final Judgment:

A. "L'Oreal" means Defendant L'Oreal S.A., a French corporation headquartered in Paris, France, and Defendant L'Oreal USA, Inc., a Delaware corporation headquartered in New York, New York, and includes all successors and assigns, and all parents, subsidiaries, divisions (including Soft Sheen Products, Inc.), groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

B. "Carson" means Defendant Carson, Inc., a Delaware corporation headquartered in Savannah, Georgia, and includes its successors and assigns, and its parents, subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

C. "Acquirer" means the entity to whom Defendants or the trustee divest the Hair Care Assets or to whom the trustee divests the Divestiture Assets.

D. "Hair Care Assets" mean:

(1)(a) all tangible assets used primarily in the research, development, marketing, servicing or sale of any product that Carson sold, sells or has plans to sell under the Relevant Brand Names, including, but not limited to: materials, supplies, and other tangible property and all assets used primarily with such products; and

(b) all tangible assets relating to any product that Carson sold, sells or has

plans to sell under the Relevant Brand Names, including, but not limited to, all licenses, permits and authorizations issued by any governmental organization; all contracts, teaming arrangements, agreements, commitments, certifications, and understandings, including supply agreements; all customer lists, contracts, accounts, and credit records; all agreements with retailers, wholesalers, or any other person regarding the sale, promotion, marketing, advertising or placement of such products; product inventory, packaging and artwork relating to such packaging; molds and silk screens; and all performance records and all other records.

(2) all intangible assets used in the research, development, production, marketing, servicing or sale of any product that Carson sold, sells, or has plans to sell under the Relevant Brand Names, including, but not limited to: all legal rights, including intellectual property rights, associated with the products, including trademarks, trade names, service names, service marks, designs, trade dress, patents, copyrights and all licenses and sublicenses to such intellectual property; all legal rights to use the names "Johnson Products Co., Inc." and "JP," and any derivation thereof; all trade secrets; all technical information, computer software and related documentation, and know-how, including, but not limited to, recipes and formulas, and information relating to plans for, improvements to, or line extensions of, the products; all research, packaging, sales, marketing, advertising and distribution know-how and documentation, including plan-o-grams, marketing and sales data, packaging designs, quality assurance and control procedures; all manuals and technical information Carson provided to their own employees, customers, suppliers, agents or licensees; all specifications for materials, and safety procedures for the handling of materials and substances; all research information and data concerning historic and current research and development efforts, including, but not limited to, designs of experiments and the results of successful and unsuccessful designs and experiments.

(3) with respect to any identifiable and specific trade secrets, recipes, formulas or know-how that, prior to the merger, were being used in the production or development of products sold under the Relevant Brand Names and any product not being divested, the Acquirer shall provide to Defendants a non-exclusive, transferable, royalty-free right to use any such trade secrets, recipes, formulas or know-how in the production or development of any non-divested product.

E. "Plant Assets" mean all or any of the following assets that the United States, in its sole discretion, determines are reasonably necessary for an Acquirer to compete effectively and viably in the sale of ethnic hair care products, including adult women's hair relaxer kits: Carson's facility and property located at 8522 South Lafayette Avenue, Chicago, Illinois, and with respect to such facility, all manufacturing, research and development equipment, tooling and fixed assets, personal property, real property, titles, interests, leases, input inventory, office furniture, materials, supplies, drawings, blueprints, designs, design protocols, specifications for parts and devices, and safety procedures for the handling of plant equipment and substances, and other tangible property.

F. "Divestiture Assets" mean the Hair Care Assets and the Plant Assets.

G. "Plan" or "Plans" means tentative and preliminary proposals, recommendations, or considerations, whether or not finalized or authorized, as well as those that have been adopted.

H. "Relevant Brand Names" mean:

(1) Gentle Treatment;

(2) Ultra Sheen; and

(3) any other name that uses, incorporates, or references either the Ultra Sheen or Gentle Treatment name, including, but not limited to, Ultra Sheen Supreme, Ultra Sheen Supreme Valu–Pak, Ultra Sheen Gro Natural, Ultra Sheen Extra Dry, Ultra Sheen Soft Touch, Ultra Sheen Hair Food, Ultra Sheen Anti–Itch, and Ultra Sheen Creme Satin Press, but not including the names Precise and Perfect Performance. With respect to the Precise name, Perfect Performance name or any other brand name or product, Defendants shall not use, incorporate or reference the names JP or Johnson Products Co., Inc. (or any derivation thereof), or the names Gentle Treatment or Ultra Sheen.

### III. *Applicability*

A. This Final Judgment applies to L'Oreal and Carson, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

B. Defendants shall require, as a condition of the sale or other disposition of all or substantially all of their assets or of lesser business units that include the Hair Care Assets (and Plant Assets if offered for divestiture under Section V of this Final Judgment), that the Acquirer agrees to be bound by the provisions of this Final Judgment.

### IV. *Divestitures*

A. Defendants are ordered and directed, within ninety (90) calendar days after the filing of the Complaint in this matter, or five (5) days after notice of the entry of this Final Judgment by this Court, whichever is later, to divest the Hair Care Assets in a manner consistent with this Final Judgment to an Acquirer acceptable to the United States in its sole discretion.

B. Defendants agree to use their best efforts to divest the Hair Care Assets as expeditiously as possible. The United States, in its sole discretion, may extend the time period for any such divestiture of the Hair Care Assets two additional periods of time, not to exceed thirty (30) calendar days each, and shall notify this Court in such circumstances.

C. In accomplishing the divestiture of the Hair Care Assets ordered by this Final Judgment, Defendants promptly shall make known, by usual and customary means, the availability of such assets. Defendants shall inform any person making inquiry regarding a possible purchase of the Hair Care Assets that they are being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment. Defendants shall offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Hair Care Assets (and Plant Assets if offered for divestiture under Section V of this Final Judgment) customarily provided in a due diligence process except such information or documents subject to the attorney-client or attorney work-product privileges. Defendants shall make available such information to the United States at the same time that such information is made available to any other person.

D. Defendants shall provide the Acquirer and the United States information relating to the personnel involved in the

research, production, operation, development, marketing and sale of the Hair Care Assets (and Plant Assets if offered for divestiture under Section V of this Final Judgment) to enable the Acquirer to make offers of employment. Defendants will not interfere with any negotiations by the Acquirer to employ any Carson employee whose primary responsibility is the research, production, operation, development, marketing or sale of the Hair Care Assets (and Plant Assets if offered for divestiture under Section V of this Final Judgment).

E. Defendants shall permit prospective Acquirers of the Hair Care Assets (and Plant Assets if offered for divestiture under Section V of this Final Judgment) to have reasonable access to personnel and to make inspections of the physical facilities of the Hair Care Assets (and Plant Assets if offered for divestiture under Section V of this Final Judgment); access to any and all environmental, zoning, and other permit documents and information; and access to any and all financial, sales, marketing, operational, or other documents and information customarily provided as part of a due diligence process.

F. Defendants shall warrant that each of the Hair Care Assets and those Plant Assets required to be divested under Section V of this Final Judgment will be operational on the date of sale.

G. Defendants shall not take any action that will impede in any way the permitting, operation, or divestiture of the Divestiture Assets.

H. Defendants shall warrant to the Acquirer of the Hair Care Assets (and those Plant Assets required to be divested under Section V of this Final Judgment) that there are no material defects in the environmental, zoning or other permits pertaining to the sale or operation of each asset, and that following the sale of the Hair Care Assets or Divestiture Assets, Defendants will not undertake, directly or indirectly, any challenges to the environmental, zoning, or other permits relating to the sale or operation of the Hair Care Assets or Divestiture Assets.

I. Unless the United States otherwise consents in writing, the divestiture pursuant to Section IV, or by a trustee appointed pursuant to Section V, of this Final Judgment, shall include the entire Hair Care Assets (and those Plant Assets required to be divested under Section V of this Final Judgment), and shall be accomplished in such a way as to satisfy the United States, in it sole discretion, that the assets being divested can and will be used by the Acquirer as part of a viable, ongoing ethnic hair care products business, including the sale of adult women's hair relaxer kits. The divestiture pursuant to Section IV, or by a trustee appointed pursuant Section V, of this Final Judgment may only be made to an Acquirer, if it is demonstrated to the sole satisfaction of the United States that the assets being divested will remain viable and the divestiture of such assets will remedy the competitive harm alleged in the Complaint. The divestitures, whether pursuant to Section IV or Section V of this Final Judgment,

(1) shall be made to an Acquirer that, in the United States's sole judgment, has the intent and capability (including the necessary managerial, operational, technical and financial capability) of competing effectively in the business of adult women's hair relaxer kits; and

(2) shall be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement among the Acquirer, L'Oreal and Carson give Defendants the ability unreasonably to raise the Acquirer's costs, to lower the Ac-

quirer's efficiency, or otherwise to interfere in the ability of the Acquirer to compete effectively.

## V. *Appointment of Trustee*

A.   If Defendants have not divested the Hair Care Assets within the time period specified in Section IV(A) of this Final Judgment, Defendants shall promptly notify the United States of that fact in writing. Upon application of the United States, this Court shall appoint a trustee selected solely by the United States and approved by this Court to effect the divestiture of the Hair Care Assets.

B.   After the appointment of a trustee becomes effective, only the trustee shall have the right to sell the Hair Care Assets. The trustee shall also have the right, upon notice to Defendants and sole approval by the United States, to sell the Plant Assets in addition to the Hair Care Assets. In the event that the Plant Assets are required to be divested to an Acquirer under this Section, the Acquirer shall, at L'Oreal's option, offer to L'Oreal a short-term, transitional agreement, not to exceed eighteen (18) months in length, pursuant to which the Acquirer shall manufacture and deliver to L'Oreal those undivested products that Carson had manufactured at the Plant Assets prior to Carson's acquisition by L'Oreal and on such terms and conditions as are agreeable to the Acquirer and L'Oreal and to the United States in its sole discretion.   Pursuant to this mutually agreed upon agreement, L'Oreal, for the undivested Carson products, shall be entitled to final authority over product specifications, an assurance that the manufacture will conform to "cosmetic good manufacturing practices" as that term is understood throughout the industry, and, at L'Oreal's expense, on-site quality supervision. In the event that the Plant Assets are required to be divested to an Acquirer

under this Section, Defendants shall, at the Acquirer's option and by sole approval of the United States, provide the Acquirer with reasonable access to the technical, service, production, or administrative employees of the Defendants involved in the operation of the Plant Assets.

C.   The trustee shall have the power and authority to accomplish the divestiture of the Divestiture Assets to an Acquirer acceptable to the United States at such price and on such terms as are then obtainable upon reasonable effort by the trustee, subject to the provisions of Sections IV, V and VI of this Final Judgment, and shall have such other powers as this Court deems appropriate. Subject to Section V(E) of this Final Judgment, the trustee may hire at the cost and expense of Defendants any investment bankers, attorneys, or other agents, who shall be solely accountable to the trustee, reasonably necessary in the trustee's judgment to assist in the divestiture.

D.   Defendants shall not object to a sale by the trustee on any ground other than the trustee's malfeasance. Any such objections by Defendants must be conveyed in writing to the United States and the trustee within ten (10) calendar days after the trustee has provided the notice required under Section VI of this Final Judgment.

E.   The trustee shall serve at the cost and expense of Defendants, on such terms and conditions as the Plaintiff approves, and shall account for all monies derived from the sale of the assets sold by the trustee and all costs and expenses so incurred.   After approval by this Court of the trustee's accounting, including fees for its services and those of any professionals and agents retained by the trustee, all remaining money shall be paid to Defendants and the trust shall then be terminated. The compensation of the trustee and

any professionals and agents retained by the trustee shall be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement providing the trustee with an incentive based on the price and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount.

F. Defendants shall use their best efforts to assist the trustee in accomplishing the required divestiture. The trustee and any consultants, accountants, attorneys, and other persons retained by the trustee shall have full and complete access to the personnel, books, records, and facilities of the business to be divested, and Defendants shall develop financial and other information relevant to such business as the trustee may reasonably request, subject to reasonable protection for trade secrets or other confidential research, development, or commercial information. Defendants shall take no action to interfere with or to impede the trustee's accomplishment of the divestiture.

G. After its appointment, the trustee shall file monthly reports simultaneously with the United States and this Court setting forth the trustee's efforts to accomplish the divestiture ordered under this Final Judgment. To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of this Court. Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person. The trustee shall maintain full records of all efforts made to divest the Divestiture Assets.

H. If the trustee has not accomplished such divestiture within six (6) months after its appointment, the trustee shall promptly file with this Court a report setting forth: (1) the trustee's efforts to accomplish the required divestiture, (2) the reasons, in the trustee's judgment, why the required divestiture has not been accomplished, and (3) the trustee's recommendations. To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of this Court. The trustee at the same time shall furnish such report to the United States. The United States and the Defendants shall have the right to make additional recommendations consistent with the purpose of the Final Judgment. This Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include extending the trust and the term of the trustee's appointment by a period requested by the United States.

## VI. *Notice of Proposed Divestiture*

A. Within two (2) business days following execution of a definitive divestiture agreement, Defendants or the trustee, whichever is then responsible for effecting the divestiture required herein, shall notify the United States of any proposed divestiture required by Section IV or Section V of this Final Judgment. If the trustee is responsible, it shall similarly notify Defendants. The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Hair Care Assets or for divestitures under Section V of this Final Judgment, the Divestiture Assets, together with full details of the same.

B.  Within fifteen (15) calendar days of receipt by the United States of such notice, the United States may request from Defendants, the proposed Acquirer, any other third party, or, if applicable, the trustee additional information concerning the proposed divestiture, the proposed Acquirer, and any other potential Acquirer. Defendants and the trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C.  Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from Defendants, the proposed Acquirer, any third party, and the trustee, whichever is later, the United States shall provide written notice to Defendants and the trustee, if there is one, stating whether or not it objects to the proposed divestiture. If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to Defendants' limited right to object to the sale under Section V(D) of this Final Judgment. Absent written notice that the United States does not object to the proposed Acquirer or upon objection by the United States, a divestiture proposed under Section IV or Section V of this Final Judgment shall not be consummated. Upon objection by Defendants under Section V(D), a divestiture proposed under Section V shall not be consummated unless approved by this Court.

## VII. *Financing*

Defendants shall not finance all or any part of any purchase made pursuant to Section IV or Section V of this Final Judgment.

## VIII. *Hold Separate*

Until the divestiture required by this Final Judgment has been accomplished, Defendants shall take all steps necessary to comply with the Hold Separate Stipulation and Order entered by this Court. Defendants shall take no action that would jeopardize the divestiture ordered by this Court.

## IX. *Affidavits*

A.  Within twenty (20) calendar days of the filing of the Complaint in this matter, and every thirty (30) calendar days thereafter until the divestiture has been completed under Section IV or Section V, each Defendant shall deliver to the United States an affidavit as to the fact and manner of its compliance with Section IV or Section V of this Final Judgment. Each such affidavit shall include the name, address, and telephone number of each person who, during the preceding thirty days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Hair Care Assets or Divestiture Assets, and shall describe in detail each contact with any such person during that period. Each such affidavit shall also include a description of the efforts Defendants have taken to solicit buyers for the Hair Care Assets or Divestiture Assets, and to provide required information to prospective purchasers, including the limitations, if any, on such information. Assuming the information set forth in the affidavit is true and complete, any objection by the United States to information provided by Defendants, including limitation on information, shall be made within fourteen (14) calendar days of receipt of such affidavit.

B.  Within twenty (20) calendar days of the filing of the Complaint in this matter, each Defendant shall deliver to the United States an affidavit that describes in rea-

sonable detail all actions Defendant has taken and all steps Defendant has implemented on an ongoing basis to comply with Section VIII of this Final Judgment. Defendants shall deliver to the United States an affidavit describing any changes to the efforts and actions outlined in Defendants' earlier affidavits filed pursuant to this section within fifteen (15) calendar days after the change is implemented.

C. Defendants shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after such divestiture has been completed.

### X. *Compliance Inspection*

A. For the purposes of determining or securing compliance with this Final Judgment, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time duly authorized representatives of the United States Department of Justice, including consultants and other persons retained by the United States, shall, upon written request of a duly authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to Defendants, be permitted

(1) access during Defendants' office hours to inspect and copy, or at Plaintiff's option require Defendants to provide copies of, all books, ledgers, accounts, records and documents in the possession, custody or control of Defendants, relating to any matters contained in this Final Judgment; and

(2) to either interview informally or depose on the record, Defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews or depositions shall be subject to the interviewee's reasonable convenience and without re-straint or interference by Defendants.

B. Upon the written request of a duly authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendants shall submit written reports, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C. No information or documents obtained by the means provided in this Section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D. If at the time Defendants, the Acquirer, or any third party furnish information or documents to the United States under this Final Judgment, including, but not limited to, this Section and Sections IV and IX, they represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(7) of the Federal Rules of Civil Procedure, and if Defendants, the Acquirer, or any third party mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(7) of the Federal Rules of Civil Procedure," then the United States shall give Defendants, the Acquirer, or any third party ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

### XI. *No Reacquisition*

Defendants may not reacquire any part of the assets divested during the term of this Final Judgment.

## XII. *Retention of Jurisdiction*

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIII. *Expiration of Final Judgment*

Unless this Court grants an extension, this Final Judgment shall expire ten (10) years from the date of its entry.

## XIV. *Public Interest Determination*

Entry of this Final Judgment is in the public interest.